IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Brian C. Jones, )
    Petitioner, )
 )
v. ) 1:19cv479 (LO/MSN)
 )
Mark J. Bolster, )
    Respondent. )

MEMORANDUM OPINION

Brian Jones, a federal inmate proceeding pro se, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, charging that disciplinary proceedings he faced while incarcerated at FCI Schuylkill violated his due process rights. [Dkt. No. 1]. The respondent has moved to dismiss or, in the alternative, for summary judgment. [Dkt. No. 10]. Jones received the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and filed a response in opposition. [Dkt. Nos. 10-1, 16]. For the reasons that follow, respondent's motion will be granted.

I. Background

On January 26, 2018, Lieutenant D. Keeney drafted an incident report, charging Jones with violating Bureau of Prisons (BOP) disciplinary code 112 for using narcotics. [Jordan Aff. Attach. 3]. The incident report documents as follows. Early in the afternoon, a medical assistance call was placed "for an inmate who was stumbling around." [Id.]. Officer Keeney then arrived on the scene, joining Officer M. Row, and found Jones "laying on the floor mumbling incoherently." [Id.]. Jones was taken to the health services unit, where staff observed that Jones had dilated pupils, slurred speech, unsteady gait, and difficulty following commands. [Id.]. Physician Assistant (P.A.) Rush reviewed Jones's medical file and determined that there was no

1

medical explanation from his history "that would contribute to his strange and erratic behavior" and determined that it was "likely the result of him ingesting, smoking, or inhaling a foreign substance." [Id.]. Jones ultimately admitted that he had used synthetic marijuana, specifically, K2. [Id.].

The incident report was delivered to Jones that day, and he was placed in administrative detention in a special housing unit (SHU) pending the investigation. [Jordan Aff. ¶ 9 & Attach. 3]. Jones received written notice on February 2, 2018, that he would face a disciplinary hearing for the charged drug offense. [Jordan Aff. Attach. 4]. Jones requested two witnesses who could "relate to the case": SIS Technician D. Trojan and P.A. Rush. [Id.]. He also requested a staff representative, and Ms. Frederick was appointed to assist him. [Id.].

The disciplinary hearing took place on February 27, 2018, before Disciplinary Hearing Officer (DHO) Angelo Jordan. [Jordan Aff. ¶ 15]. Jones testified in his defense and denied ingesting narcotics. [Jordan Aff. Attach 1]. He also said that Ms. Frederick did not provide him with copies of documents that he requested in writing. [Id.]. Neither of Jones's requested witnesses testified. [Id.]. Before the hearing, Jordan met with Officer Trojan, who told him that he "was not involved in the incident," and therefore determined that "there [was] no indication [O]fficer Trojan would have information directly relevant to the charge if he was to appear at the DHO hearing as a witness." [Id.]. As for P.A. Rush, Jordan decided that he need not appear at the hearing because his account of the incident had been submitted in the clinical encounter record from January 26, 2018, and in a supporting memorandum. [Id.].

DHO Jordan considered documentary evidence that revealed the following about the incident. Officer Row discovered Jones "stumbling" around and "having difficulty staying on his feet," prompting him to call for medical assistance. [Jordan Aff. Attach 1]. This behavior was

2

confirmed by the video footage. [Id.]. Lieutenants Schreffler and Keeney, Officer Pozza, and P.A. Rush witnesed Jones admitting that he used synthetic marijuana (K2). [Id.]. During the medical examination, P.A. Rush observed Jones exhibiting "signs suggestive of use of [a] foreign substance, such as slurred speech, sluggish pupils, and sinus tachycardia (rapid heart rate)." [Id.]. The physician also pointed out that a medical record from July 31, 2017, notes that Jones "has a history of ingestion, smoking or inhaling of foreign substance." [Id.]. Jones also had submitted a "cup positive" urine sample the day of the incident. [Id.]. But when sent to an outside laboratory for verification two weeks later on February 8, 2018, the sample tested negative for narcotics. [Id.].

In finding Jones guilty, DHO Jordan accorded greater weight to the officers' statements than to Jones's testimony. [Id.]. He sanctioned Jones with lost good-conduct time (41 days disallowed and 216 days' non-vested good-conduct time forfeited); 60 days in disciplinary segregation; 2 years' lost commissary, phone, and visitation privileges; and a $41.60 fine. [Id.].

The DHO report—No. 3082321—was delivered to Jones on March 21, 2018. [Id.]. The report notified Jones that if he sought to appeal he must do so within twenty days—by April 10. [Id.]. Jones filed an appeal that was received on April 4, 2018, but was docketed as an appeal from a different disciplinary proceeding, No. 3016551. [Jordan Aff. Attach 8]. The appeal was rejected because "page 4 of the BP10 [was] not legible." [Id.]. Jones submitted two more appeals (received on April 23 and May 9) that were recorded for proceeding No. 3016551 and rejected because the underlying incident report in that proceeding had been expunged. [Id.]. Three later appeals received on June 5, June 25, and August 13—recorded for proceeding No. 3082321—were rejected as untimely, stating that the appeal was due by April 10, 2018. [Id.]. Jones has submitted a BOP memorandum dated February 1, 2019, which was given to the Administrative

Remedy Coordinator at the Mid Atlantic Regional Office, stating that "Inmate Brian Jones 68485-054 has been attempting to appeal incident report #3082321, not incident report #3016551. This mix up was not his fault. Please excuse the delay from 04-10-2018 thru [sic] 06-05-2018 and consider his appeal timely." [Pet'r Resp. Ex. N]. Jones appears to have submitted another regional appeal shortly thereafter, received on February 14, 2019, and it was rejected as untimely, again citing Jones's failure to appeal within twenty days of receiving the report on March 21, 2018. [Pet'r Resp. Ex. O].

Jones then filed this § 2241 petition on April 18, 2019, contending that the disciplinary proceedings violated his due process rights. In particular, he claims that (1) the DHO did not provide his staff representative with a copy of the investigation report and other "relevant material"; (2) the DHO refused to produce requested "documentary evidence"; (3) the DHO denied his request for P.A. Rush to appear at the hearing as a witness; (4) the staff representative "failed to provide substantive assistance" and documentary evidence; (5) the DHO's findings did not consider an exculpatory outside laboratory report and erroneously considered an expunged incident report; and (6) the BOP failed to comply with its regulations. [Dkt. No. 1].

## II. Standard of Review

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Hupp v. Cook, 931 F.3d 307, 317 (4th Cir. 2019) (internal quotation marks and

---

[1] When a party presents matters outside the pleadings in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the Court does not exclude them—as is the case here—the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d).

4

citations omitted). "[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)). In making that inquiry the Court views the evidence, and draws all inferences, in the light most favorable to Jones, as the nonmoving party. See E.W. by T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

### III. Analysis

#### A. Exhaustion

Respondent argues first that Jones failed to exhaust his administrative remedies and therefore summary judgment is warranted on that ground. He asserts that DHO appeals must be submitted within twenty days to the regional director, but Jones failed to comply with that mandate by waiting seventy-six days (until June 5, 2018) to submit the appeal. See 28 C.F.R. §§ 542.14–542.15.

The evidentiary record documenting Jones's appeal efforts is contradictory and incomplete, rendering summary judgment on exhaustion grounds inappropriate. Jones submitted evidence demonstrating that his initial appeal was timely. The February 1, 2019, memorandum directs the Administrative Review Coordinator at the Mid Atlantic Regional Office to deem the appeal timely because of a mistake unattributable to Jones. [Pet'r Resp. Ex. N]. Afterwards, it appears that Jones submitted another appeal to the regional office, and it was considered untimely again, despite the memorandum's directive. [Pet'r Resp. Ex. O]. The record does not conclusively establish whether Jones continued to appeal to the next level. See 28 C.F.R. § 542.15. Because there are disputed facts and record gaps, the Court cannot grant summary judgment on exhaustion grounds.

**B. Due Process Claims**

Nevertheless, the Court agrees with respondent that he is entitled to summary judgment on the merits of the due process claims. When a disciplinary sanction results in lost good-time credit, as happened here,[2] a prisoner is entitled to procedural due process that includes (1) written notice of the charge; (2) a hearing at which the prisoner has a qualified right to call witnesses and present documentary evidence; and (3) a written statement explaining the evidence relied on to impose disciplinary action. See Ponte v. Real, 471 U.S. 491, 495 (1985); Tyler v. Hooks, 945 F.3d 159, 168 (4th Cir. 2019) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)). Jones's claims principally relate to his rights to review evidence in advance of the hearing and to call witnesses and present evidence at the hearing, as well as the evidence relied on for the conviction. The Court will address each of Jones's six due process claim in turn.

i. Claims (1) & (2): Documentary Evidence

Concerning documentary evidence, Jones claims that the DHO did not provide his staff representative, Ms. Frederick, with a copy of the investigation report and other "relevant material," and relatedly, that the DHO refused to produce requested "documentary evidence." Encompassed with the qualified right to present documentary evidence is the qualified right to *access* that evidence. Lennear v. Wilson, 937 F.3d 257, 269–70 (4th Cir. 2019). To the extent that DHO Jordan avers that he did not receive a written request for the production of evidence

---

[2] Jones also contends that his placement in administrative segregation during the disciplinary proceedings violated his due process rights. [Dkt. No. 1] But "administrative segregation from the general population does not implicate a protected liberty interest absent a showing of specific facts that conditions of confinement are significantly more onerous." Thompson v. Commonwealth of Virginia, 878 F.3d 89, 110 (4th Cir. 2017). Because Jones has not attempted to explain how the conditions in administrative segregation were different from general population, let alone more onerous, he has not demonstrated that his placement there implicates a liberty interest protected by the due process clause. Therefore, respondent is entitled to summary judgment on that claim.

6

from Jones until February 29, 2018—two days after the DHO hearing—that does account for the fact that at the disciplinary hearing, Jones stated that he had not received requested copies of documentary evidence. [Jordan Aff. ¶¶ 17–18 & Attach 1]. At the hearing Jordan explained that "inmates are not provided copies of documentary evidence in matters of inmate discipline," and so the prison had "divulge[d] . . . the substance of all documentary evidence." [Jordan Aff. Attach 1]. An inmate is entitled to access documents, upon request, unless disclosing the evidence would be "unduly hazardous to institutional safety or correctional goals." Id. at 270 (quoting Wolff, 418 U.S. at 566). And inmate requests to access evidence must be considered on an individualized basis, meaning that prisons cannot have a blanket policy forbidding access, which appears to be the case here. Id. at 270–71. Furthermore, it is unclear what information Jones received when the prison "divulge[d] the substance" of unspecified documentary evidence. Accordingly, the prison violated Jones's procedural due process rights by applying a blanket policy prohibiting access to documentary evidence.

Still, if the due process violation was harmless, respondent is entitled to summary judgment. See Brown v. Braxton, 373 F.3d 501, 508 (4th Cir. 2004). The error is not harmless if the undisclosed evidence could have aided Jones's defense. Lennear, 937 F.3d at 277. Jones's letter to DHO Jordan states that he sought the following evidence: (1) urinalysis test results; (2) the Unit Disciplinary Committee's written report; (3) a log book entry from February 1, 2018; (4) a DHO report from a December 4, 2017 hearing; and (5) the health services clinical encounter record from January 26, 2018; and (6) the investigation report. [Jordan Aff. Attach 7]. Jones has not explained how accessing this evidence would have helped his defense. "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Gekas v.

Vasiliades, 814 F.3d 890, 896 (7th Cir. 2016) (internal citation omitted). Because Jones offers no such evidence, the Court cannot conclude that he was harmed by the due process error.

### ii. Claim (3): Witness Request

Jones next contends that his right to due process was violated when the DHO refused his request for P.A. Rush to testify at the disciplinary hearing. Respondent argues that he is entitled to summary judgment on this claim because "DHO Jordan appropriately exercised his discretion in refusing Petitioner's request for PA Rush's live testimony." [Resp't Mem., at 22].

The undisputed evidence demonstrates that no rational trier of fact could conclude that Jones suffered a due process violation based on DHO Jordan's decision to preclude live testimony from P.A. Rush, and, thus, respondent is entitled to summary judgment on this claim. It is within a prison official's discretion to deny an inmate's request for live witness testimony when "legitimate penological interests justif[y] excluding a witness." Brown, 373 F.3d at 505. When a proposed witness's testimony would be cumulative and therefore unnecessary, a prison appropriately exercises that discretion. See Wolff, 418 U.S. at 566; Turner v. Caspari, 38 F.3d 388, 392 (8th Cir. 1994). Here, Jordan denied Jones's request for Rush to testify because the physician had already supplied his account of the incident in the contemporaneous clinical encounter note from January 26, 2018, and in an additional written memorandum. [Jordan Aff. ¶ 13]. Moreover, because Jones has not explained how Rush's live testimony could have supplemented the written materials, he has not demonstrated that he was prejudiced by the denial. See Brown, 373 F.3d at 508.

### iii. Claim (4): Staff Representative Performance

Jones asserts that the appointed staff representative "failed to provide substantive assistance" during the proceedings, pointing specifically to Ms. Frederick's failure to provide

8

him with documentary evidence. But due process requires a lay advocate, like a staff assistant, only if the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." Wolff, 418 U.S. at 570. Neither condition is alleged here.

Nevertheless, Jones asks this Court to adopt the Second Circuit's position, which holds that "prison authorities ha[ve] a constitutional obligation to provide substantive assistance to an inmate in marshalling evidence and presenting a defense," particularly when an inmate is confined in a SHU. See Giano v. Sullivan, 709 F. Supp. 1209, 1214 (S.D.N.Y. 1989) (relying on Eng v. Coughlin, 858 F.2d 889, 897–98 (2d Cir. 1988)). But see Miller v. Duckworth, 963 F.2d 1002, 1004 (7th Cir. 1992) (concluding that "there is no basis for expanding the limited role of lay advocate assistance for prison inmates beyond that recognized in Wolff"). This assistance includes gathering evidence and obtaining documents—the type of assistance Jones sought from Ms. Frederick. Eng, 858 F.2d at 898.

Even if the Court were to apply the Second Circuit's rule, the record still would warrant summary judgment in respondent's favor. According to the DHO report, Ms. Frederick stated that "Jones made no specific request of her as a staff representative" and "'laughed at' her" when she asked "if there was anything he needed to tell her before he appears before the DHO." [Jordan Aff. Attach 1]. Jones does not dispute this account, insisting instead that respondent should have submitted an affidavit from Ms. Frederick to "admit[] or refut[e] the allegations made against her in my complaint." [Pet'r Resp., at 5]. That is unnecessary. The Court may consider the DHO report as a public record that sets out the factual findings from a legally authorized investigation. See Fed. R. Evid. 803(8) (public record hearsay exception); 28 C.F.R.§ 541.8(h) (authority for DHO hearing and report). Because the undisputed evidence

demonstrates that Jones never asked for assistance in advance of the hearing, summary judgment *is* warranted for respondent on the claim that the staff assistant provided constitutionally inadequate assistance.

### iv. Claim (5): DHO Evidentiary Considerations

Jones further contends that DHO Jordan's evidentiary considerations violated his due process rights in two ways. First, Jones argues that Jordan failed to consider an exculpatory outside laboratory report. Second, he asserts that Jordan's findings erroneously considered an expunged incident report.

Concerning the lab report, Jones is wrong when he asserts that DHO Jordan did not consider it. The DHO report reflects that Jordan indeed considered the outside laboratory's report, which found that Jones's urine specimen "tested negative for the presence of a narcotic substance." [Jordan Aff. Attach 1]. Rather, Jordan did not *rely* on that evidence to support his finding that Jones committed the charged offense. [Id.]. In fact, Jordan relied on neither urinalysis finding. [Id.] And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

To the extent Jones intends to argue, instead, that the laboratory report negates the DHO's finding and, thus, there was insufficient evidence to find that he ingested a narcotic, that claim also fails. Due process is satisfied when "some evidence" supports the DHO's finding. Tyler, 945 F.3d at 170. DHO Jordan's reliance on the video footage, P.A. Rush's medical assessment, and the responding officers' statements, including Jones's admission to them that he smoked synthetic marijuana, convinces the Court that "the record is not so devoid of evidence

10

that the findings of the [DHO] were without support or otherwise arbitrary." See Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 457 (1985).

The record also does not support Jones's assertion that the DHO report considered an expunged incident report. The report considered the clinical encounter record from January 26, 2018 (the date the charged offense took place), which states that Jones has "a history of substance abuse. See note 7/31/17." [Jordan Aff. Attach 2]. Jones contends that the note referenced is the expunged incident report, rather than Jones's medical record from that date [Pet'r Resp., at 5–6], disputing P.A. Rush's statement in the DHO report that it is "noted in his *medical record* on July 31, 2017" that Jones has a history of using foreign substances. [Jordan Aff. Attach 1 (emphasis added)]. Jones's unsupported assertion that the notation refers to the expunged record, rather than a medical record from that date, is insufficient to create a dispute of material fact. See Graves v. Lioi, 930 F.3d 307, 324 (4th Cir. 2019) ("[S]urviving summary judgment . . . requires evidence, not unsupported conjecture.").

### v. Claim (6): BOP compliance with federal regulations

Finally, Jones claims that the DHO "failed to comply with 'BOP' regulations" in violation of his due process rights. [Dkt. No. 1]. Attached to the petition are sixteen pages of regulations governing BOP disciplinary procedures, some of which are underlined. [§ 2241 Pet. Attach.]. Assuming the underlined provisions are the ones Jones contends the DHO violated, he cannot succeed on this claim as a matter of law. Prison regulations that are "primarily designed to guide correctional officials in the administration of a prison," like the ones Jones points to, are "not designed to confer rights on inmates." See Sandin v. Connor, 515 U.S. 472, 481–82 (1995). Rather, the relevant inquiry is whether a protected liberty interest entitles a prisoner to Wolff's procedural requirements and if so, whether those requirements are met. Id. at 487. As explained

throughout this Memorandum Opinion, all of Jones's alleged procedural deficiencies fail at summary judgment.

## IV. Conclusion

For the reasons stated above, respondent's motion to dismiss, or in the alternative, motion for summary judgment [Dkt. No. 10] will be granted. This petition will be dismissed with prejudice through an Order that will issue alongside this Memorandum Opinion.

Entered this ~~14~~ day of Feb 2020.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge